# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-04-150 |
| | § | (Civil Action No. H-08-1628) |
| EDY GUARDADO-MEZEN | § | |

## MEMORANDUM AND ORDER

Defendant Edy Guardado-Mezen filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 ("Defendant's Motion" or "§ 2255 Motion") [Doc. # 456] and a supporting Memorandum [Doc. # 457].  The United States filed a Response and Motion to Dismiss [Doc. # 478], and Defendant filed a Reply [Doc. # 497].[1]  The Court has carefully reviewed all pertinent matters in this criminal case.

---

[1]     Defendant also filed on June 17, 2009, a "Motion for Leave to Amend or Addend Section 2255 Motion After Receipt of Case File from Former Counsel Mosbacker" ("Motion for Leave to Amend") [Doc. # 499].  By Order [Doc. # 492] entered May 8, 2009, the Court directed counsel Mervyn Mosbacker to provide Defendant with "any documents in his file that he deems relevant to the pending § 2255 Motion."  In his Response [Doc. # 495], Mosbacker advised the Court that he had already provided to Defendant the entire trial record prepared for the appeal in this case, complete transcripts of the trial, transcripts of the hearings on the motion to suppress, a transcript of the sentencing, a copy of the brief filed with the Court of Appeals, a copy of the Fifth Circuit's decision on that appeal, and a copy of the petition for a writ of certiorari filed with the United States Supreme Court.  Mosbacker represented that he had "no other documents" relevant to the § 2255 Motion.  As a result, the Motion for Leave to Amend [Doc. # 499] is **DENIED**.

Based on this review, the Court's clear recollection of the case including the evidence presented at trial, and the application of governing legal authorities, the Court **grants** the United States' Motion to Dismiss, **denies** Defendant's § 2255 Motion, and **dismisses** the corresponding civil action (H-08-1628) for the reasons set forth below.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The Fifth Circuit in its decision affirming Defendant's conviction and sentence provided a detailed factual background. *See United States v. Ibarra-Zelaya*, 465 F.3d 596, 600-02 (5th Cir. 2006).  In March 2004, smugglers brought a group of illegal immigrants to Houston, Texas.  The illegal immigrants, their friends and/or their relatives had paid the smugglers to sneak the illegal immigrants into the United States.

The evidence at trial established that on March 11, 2004, Defendant Guardado-Mezen and five co-defendants went to an apartment where the illegal immigrants were being held.  The defendants had a plan to seize custody of some of the illegal immigrants and move them to defendants' chosen location.  When the defendants arrived at the apartment, they pointed guns at the illegal immigrants they chose to take.  Defendant and the other co-defendants placed those individuals into cars.  Co-defendant Henry Gutierrez-Andrade handed his cell phone to the captives, telling them to call their family members and direct them *not* to send the remaining money to the original smugglers.

Defendant and his co-defendants took their captives to a different apartment in Houston.  Various defendants were armed at all times and took turns guarding the captives.  Griselda Barnica and her ten-year-old daughter, among others, also were in the apartment for at least some of the time the captives were being held.  Co-Defendant Jose Efrain Linares-Tabora, while armed, threatened the captives with physical harm.  *See Ibarra-Zelaya*, 465 F.3d at 601.

Defendants instructed the captives to tell their family members to send the release money to the co-defendants rather than to the original smugglers.  Guardado-Mezen specifically forced one of the captives to request additional money from a friend, even though the friend had already paid the original group an agreed $2,100.

On March 12, 2004, Houston police received a call about a "hostage situation" with weapons at the apartment where the defendants were holding the illegal immigrants.  Uniformed officers, upon arriving at the scene, saw four people leave the apartment and get into a car.  The officers stopped the car because it had an expired registration.  Guardado-Mezen was driving the car.  When none of the occupants of the car could produce valid identification, all the occupants were placed in the patrol car.  Barnica, one of the passengers, told the officer that she had identification in her apartment.  She advised the officer that she wanted to get her identification and agreed that the officer could come with her.

As they approached her apartment, Barnica told the officer that there were a few people inside.  She knocked on the door, but nobody answered.  Barnica stated that she did not have keys to the apartment.  The officer heard people moving inside the apartment.  The evidence at trial established that a co-defendant was directing the captives with his pistol to move from one room to another.

A few minutes later, the door was opened.  The officer observed three men fleeing the apartment from a balcony and observed many other people in the living room. The officer entered the apartment and conducted a protective sweep of the premises. He moved all the individuals found in the apartment into the living room. He then asked Barnica if he could search the apartment for weapons.  Barnica consented to the search, but no weapons were found at that time.

Barnica asked to take her daughter to the bathroom, where an officer observed that the lid of the toilet tank was crooked.  He looked in the toilet tank and found three loaded handguns.

At this point, a police officer started to handcuff Barnica.  Guardado-Mezen and a co-defendant began moving toward the officer guarding the door of the apartment, causing all the officers drew their weapons.  The defendants were ordered to move against the wall, they complied, and they were then taken to patrol cars.

Defendant and the others were charged with alien smuggling and hostage taking.  Guardado-Mezen filed a motion to suppress, which was denied following an evidentiary hearing.  After a jury trial, Defendant was found guilty of all counts. Defendant was sentenced to life imprisonment.[2]

Defendant appealed his conviction to the United States Court of Appeals for the Fifth Circuit, which affirmed Defendant's conviction and sentence.  This § 2255 Motion followed.  Guardado-Mezen set forth a numbered list of 43 claims, but many are duplicative, either verbatim or in substance.

## II.    STANDARD OF REVIEW FOR SECTION 2255 MOTIONS

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a petitioner "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).  When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final.  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).  "As a result, review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which

---

[2]      Application of the Sentencing Guidelines in Defendant's case resulted in a Total Offense Level of 46, but the maximum offense level under the Guidelines is 43.  As a result, the Court calculated Defendant's guideline range based on a Total Offense Level of 43.  *See* Sentencing Transcript [Doc. # 312], pp. 24-25.

may not be raised for the first time on collateral review without a showing of cause and prejudice." *Id.* Of course, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500 (2003) (holding that ineffective-assistance claims are properly raised on collateral review and not procedurally barred by a failure to raise them on direct appeal).

Defendant is proceeding *pro se* in this matter. *Pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007); *Haines v. Kerner*, 404 U.S. 519 (1972). At the same time, however, *pro se* litigants are still required to provide sufficient facts to support their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

A motion brought under 28 U.S.C. § 2255 may be denied without a hearing if the motion, files, and records of the case conclusively show that the defendant is not entitled to relief. *See United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (*per curiam*) (citing *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980)). The record in this case, which includes an affidavit from Defendant's counsel, is adequate to dispose of Guardado-Mezen's allegations fully and fairly. Therefore, an evidentiary hearing is not necessary in this case.

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

### A.   Applicable Legal Standard

Defendant claims that he was denied effective assistance of counsel. The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Claims for ineffective assistance of counsel are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally-deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness.  *See United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005), *cert. denied*, 547 U.S. 1041 (2006).   Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* (quoting *Strickland*, 466 U.S. at 689).  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.  An attorney's failure to make meritless arguments does not demonstrate deficient performance and cannot form the basis for relief under § 2255.  *See United States v. Kimler*, 167 F.3d 889, 892 (5th Cir. 1999).

To prove prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Harris*, 408 F.3d 186, 189 (5th Cir.) (quoting *Strickland*, 466 U.S. at 694), *cert. denied*, 546 U.S. 919 (2005).

### B.  <u>Counsel at Trial and Sentencing</u>

Defendant argues that his trial counsel, Mervyn Mosbacker, Esq., a former United States Attorney for the Southern District of Texas, was constitutionally

ineffective, both during trial and at sentencing.  Defendant raises the failure to call Barnica as a witness during the suppression hearing and at sentencing (Claims 2, 4-9, 16, 23 and 27).  Defendant also alleges that he was denied effective assistance of counsel when his attorney failed to call him to testify at trial (Claims 10, 11, 17 and 18), failed to file a second suppression motion (Claim 39), failed to move for a continuance (Claim 12), failed to challenge the superseding indictment (Claim 15), failed to prepare for trial (Claim 20) and sentencing (Claim 31), failed to challenge the Court's jury instructions (Claim 24), failed to prevent an enhancement at sentencing (Claims 28-30), and failed in other generic, non-specific ways (Claims 13, 14, 22 and 38).  Defendant has failed to establish deficient performance or resulting prejudice as to his claims of ineffective assistance of counsel.

***Barnica.***-- In Claims 2, 4-9, 16, 23 and 27, Defendant argues that he was denied effective assistance of counsel because Barnica was not called to testify at the suppression hearing or at sentencing and, as a result, he was denied his right to confront the witnesses against him.  The record reflects that Barnica was not called to testify at the suppression hearing or at sentencing because her attorney had declined to allow Mosbacker to interview her and had advised Mosbacker that Barnica, if called to testify, would give testimony against Defendant's interest.  *See* Mosbacker Affidavit, ¶¶ 1-2, 5, 11.  For purposes of the suppression hearing, Mosbacker's

statements are supported by Barnica's plea agreement, in which she acknowledged that she gave consent for the police officers to enter the apartment.  *See* Barnica Plea Agreement, pp. 6-7.  For purposes of the sentencing hearing, the Court declined to impose the two-point enhancement based on Barnica's allegation that Guardado-Mezen had threatened her if she cooperated with the Governnment.  Mosbacker's decision not to call Barnica to testify at the suppression hearing and at sentencing was not constitutionally deficient and did not prejudice Defendant.  Indeed, it is likely that had Barnica testified at sentencing, the Court would have imposed the two-point enhancement for threatening the witness.  Defendant is not entitled to § 2255 relief on these claims.

***Defendant's Testimony.--*** Defendant asserts in Claims 10, 11, 17 and 18 that he was denied his constitutional right to effective counsel when his attorney did not call him as a witness at trial.  A defendant has a fundamental constitutional right to testify on his own behalf at trial.  *See Rock v. Arkansas*, 483 U.S. 44, 49-52 (1987).  An attorney cannot override a defendant's clear decision to testify.  *See United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002).

In his Affidavit [Doc. # 477], Mosbacker explains that he did not call Defendant as a witness because Defendant had decided, after discussing the issue fully with counsel, that he would not testify at trial.  Defendant states in his Affidavit [Doc. #

498] that he "had planned to testify," but he does not dispute that he did not advise his attorney that he had such a plan.  The Court finds from this record that Defendant did not advise his attorney that he wanted to testify and, indeed, criticized his co-defendant (Elbin Geovany-Mezen) for deciding to testify at trial.

Moreover, even if the Court were to find that Mosbacker rendered ineffective assistance of counsel by not calling Defendant as a witness at trial, Defendant has failed to establish that his defense was prejudiced as a result.  Defendant states in his Affidavit that he planned to testify to "rebut the government's assertion that [he] possessed 'ransom' money.  This was allowed to be presented to jury uncontested." To the contrary, however, the record reflects and the Court recalls that Mosbacker zealously contested the Government's position that there was a "ransom" demanded by Guardado-Mezen or any co-defendant.

Defendant has failed to establish that Mosbacker interfered with his right to testify at trial and has failed to establish that any interference caused prejudice to Defendant.  Consequently, Defendant is not entitled to § 2255 relief on this claim.


***Second Suppression Motion.--*** Defendant alleges in Claim 39 that his attorney was constitutionally ineffective because he failed to file a second suppression motion arguing that "the government created exigent circumstances, behind the illegal Terry

stop theory."   The record establishes, however, that there were no exigent circumstances relied upon for the initial stop of the vehicle – the stop was based on the vehicle having an expired registration.

To the extent Defendant believes his attorney should have filed a motion to suppress challenging the use of exigent circumstances to justify the initial entry into Barnica's apartment, Defendant has failed to establish deficient performance or resulting prejudice.   The Fifth Circuit on appeal held specifically that the police officer's entry into the apartment and the search "was a valid protective sweep justified by exigent circumstances."   *See Ibarra-Zelaya*, 465 F.3d at 605.   Defense counsel was not constitutionally ineffective for failing to file a motion to suppress that was not supported by the facts of the case.

***Motion for Continuance*.--** In Claim 12, Defendant seeks relief under § 2255 because his attorney failed to request a continuance which "prevented the defendant from introducing the only testimony that could plausibly have help[ed] him, and introducing any evidence on its behalf."   Guardado-Mezen's trial was originally scheduled for June 7, 2004.   At a hearing on June 1, 2004, the Court granted motions for continuance filed by co-defendants and rescheduled the trial to July 21, 2004.   At a later hearing on June 30, 2004, the Court continued the trial to September 7, 2004.   At a hearing on August 17, 2004, the Court continued the trial to September 9, 2004.

Following the return of a Superseding Indictment [Doc. # 108] on September 2, 2004, the Court continued the trial to October 13, 2004.

It is clear from the record that the trial was continued on several occasions from the original trial date of June 7, 2004, to the eventual trial date of October 13, 2004. Because the trial was continued without a motion from Guardado-Mezen, there has been no showing of prejudice from his attorney's failure to move for a continuance.

***Challenge to Superseding Indictment.*--** Defendant states in Claim 15 that his attorney rendered ineffective assistance because he failed "to file the proper motion on behalf of his client, pertaining to the government vindictive abuse, when the government was allowed to constructively amend the grand jury indictment to gain a tactical advantage on the defendant." The record does not support this allegation. There is no indication of "government vindictive abuse" and the United States did not "constructively amend the grand jury indictment." Instead, the United States presented evidence to a grand jury, which returned a Superseding Indictment. Mosbacker's failure to file a motion challenging the Superseding Indictment on the basis suggested by Defendant in Claim 15 was neither deficient performance nor prejudicial.

***Preparation for Trial and Sentencing.*--** Defendant asserts that his attorney failed to prepare for trial (Claim 20) and for sentencing (Claim 31). Mosbacker in his

Affidavit [Doc. # 477] describes in detail his preparation for trial and sentencing, and the statements are supported by the record.  For example, Mosbacker's statements that he prepared and argued a motion to suppress and that he took the lead in much of the witness questioning during trial are fully supported by the record.

Defendant complains that Mosbacker did not call Eneida Rodas to testify at trial.  Rodas, according to Defendant, would have testified that he purchased a vehicle from Defendant.  Mosbacker states in his Affidavit, however, that he was unable to locate the witness.  Additionally, any evidence that Defendant received money in connection with the alleged sale of a vehicle to Rodas would not negate testimony at trial that Guardado-Mezen provided funds used to purchase food and other items for the illegal immigrants being held by Defendants.

Defendant has failed to allege specifically what more Mosbacker could have done to prepare for trial or sentencing, or how any additional preparation would have changed the result at trial or sentencing.  Indeed, Guardado-Mezen specifically advised the Court at sentencing that he had no objections to the Presentence Report ("PSR") that had not already been made by his attorney.  *See* Sentencing Transcript [Doc. # 312], p. 4.  Defendant is not entitled to relief based on these two claims.  *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir.), *cert. denied*, 128 S. Ct. 456 (2007); *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

***Jury Instructions.***-- Defendant in Claim 24 raises his attorney's alleged failure to request a jury instruction regarding multiple conspiracies. A "multiple conspiracies" charge applies in situations where a defendant claims that he was not a member of the indicted conspiracy, even though he may have been a member of an unindicted conspiracy. *See United States v. Toro*, 840 F.2d 1221, 1236 (5th Cir. 1988). Guardado-Mezen, however, has not asserted that he was a member only of an unindicted conspiracy. As a result, the "multiple conspiracies" instruction was not appropriate and counsel was not constitutionally ineffective for failing to request the instruction.[3] *See, e.g., United States v. Castaneda-Cantu*, 20 F.3d 1325, 1335 (5th Cir. 1994).

***Enhancement.***-- Defendant argues in Claims 28-30 that his attorney was ineffective for failing to challenge the application of enhancements at sentencing. In Claim 28, Defendant claims his attorney should have "challenged the constitutionality of the jury's oversight, finding a 'constructive amending violation' along with a 'Confrontation violation.' Such an objection was a necessity in light of the enhancement directed to the movant by the judge during sentencing." In Claim 29,

---

[3]    The United States charged Defendants with conspiring to transport and harbor illegal immigrants under two different theories. Consequently, the Court charged the jury that they could find a defendant guilty of the conspiracy charge only if all twelve jurors agreed that the United States had proved beyond a reasonable doubt the conspiracy under the same theory. *See* Court's Instructions [Doc. # 179], pp. 16-17.

Defendant states that counsel's "failure to challenge this violation somehow allowed movant to be 'enhanced' to the point where his period of incarceration would harm his 4th and 6th amendment rights therefore resulting in an unjust life sentence."  In Claim 30, Defendant alleges that defense counsel's failure "to make a constitutional challenge objection" allowed the Court to base enhancement points on Barnica's statements.

Defendant received a four-point adjustment for being an organizer/leader of criminal activity involving five or more participants and a two-point adjustment for using a minor to commit the offense.  The Probation Officer recommended, but the Court did not impose, a two-point adjustment for obstruction of justice for threatening Barnica if she cooperated with the United States.  *See* Sentencing Transcript [Doc. # 312], p. 13.  The Court also declined to consider the alleged threat when deciding what sentence to impose in this case.  *See id.* at 34.  Consequently, Defendant's arguments relating to enhancements based on Barnica's statements are refuted by the record.

Mosbacker, both in writing and orally at the sentencing hearing, fully challenged the application of each enhancement.  The record refutes Defendant's argument that Mosbacker rendered constitutionally deficient performance in connection with objecting to the application of enhancements to Defendant's sentence.

Defendant is not entitled to relief under § 2255 based on his arguments in Claims 28-30.

   ***Other Claims*.--** In Claims 13, 14, 22 and 38, Defendant makes general, non-specific allegations of ineffective assistance of counsel. For example, Claim 13 states:

> Rather than operating as the counsel defined within the boundaries of the Sixth Amendment to the Federal Constitution, trial counsel Mosbacker worked as a 'dangerous instrumentality' against movant at various states of the proceedings in the matter at bar in which he represented movant. For these reasons movant has satisfied both prongs promulgated in Strickland v. Washington.

Memorandum in Support of Motion [Doc. # 457], p. 7. Such vague, conclusory allegations do not provide a basis for relief under § 2255. *See, e.g., Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.2000); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

   Although not in a numbered claim, Defendant asserts in his § 2255 Motion that he would not have gone to trial and would, instead, have entered a plea of guilty if he had known that he faced a potential sentence of life imprisonment. Mosbacker states under oath in his Affidavit that he informed Guardado-Mezen that "he could very well face a life sentence with the various enhancements that may be applicable" and Defendant "decided that he would not plead guilty." Although Defendant and Mosbacker both believe the life sentence was harsh, Mosbacker informed Defendant of the potential for a life sentence – and that the potential existed even if Defendant entered a plea of guilty – and Defendant decided not to plead guilty. He has not

established deficient performance by his attorney or resulting prejudice and, therefore, he is not entitled to relief under § 2255 on this basis.

In his Reply [Doc. # 497], filed more than five years after Mosbacker was appointed to represent him in this case, Defendant claims for the first time that Mosbacker does not speak Spanish well and, as a result, he never understood anything Mosbacker told him.  The Court finds no credible evidence to support the allegation that Mosbacker's ability to speak Spanish was so poor that Guardado-Mezen could not communicate with him.  Moreover, the record reflects that, at a hearing in open court at which Defendant was present, the Court discussed a problem of a co-defendant who had been appointed an attorney who did not speak Spanish and replacement counsel was appointed.  Neither at that hearing on June 1, 2004, nor at any time until he filed his Reply on June 15, 2009, did Guardado-Mezen allege that he had any difficulties whatsoever communicating with Mosbacker.

### C.    <u>Counsel on Appeal</u>[4]

A claim that counsel has provided ineffective assistance on appeal is similarly governed by the test set out in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires the defendant to establish both constitutionally deficient performance and

---

[4]    Defendant represented to the Court at sentencing that he wanted Mosbacker to remain as his court-appointed attorney for purposes of the appeal.  *See* Sentencing Transcript [Doc. # 312], p. 40.

actual prejudice.  *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (applying *Strickland* to a claim of ineffective assistance of counsel on appeal).  To establish that appellate counsel's performance was deficient in the context of an appeal, the defendant must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and raise them.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  If the defendant succeeds in such a showing, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal."  *Id.*

The right to counsel on appeal "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal."  *Robbins*, 528 U.S. at 278.  Moreover, appellate counsel is not deficient for failing to raise every non-frivolous issue on appeal.  *United States v. Reinhart*, 357 F.3d 521, 524 (5th Cir. 2004) (citing *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 2000)).  To the contrary, counsel's failure to raise an issue on appeal will be considered deficient performance only when that decision "fall[s] below an objective standard of reasonableness."  *Id.*  This standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful."  *Id.*

In this case, Defendant argues that he was denied effective assistance of counsel on appeal when appellate counsel failed to challenge the Court's jury instructions (Claim 40), failed to present a list of other issues, including prosecutor misconduct, lack of confrontation of witnesses, "Constructive Amendment indictment," denial of right to testify, failure to call witnesses, and sentencing violations (Claim 41), failed to raise the Confrontation Clause on direct appeal (Claim 42), and failed to challenge the prosecutor's improper remarks during closing argument (Claim 43).   Defendant has failed to demonstrate that his appellate attorney's performance was in any way deficient, and the record does not support Defendant's arguments.   As has been discussed herein, the Court's jury instructions were appropriate, the indictment was not constructively amended, and there is no indication in the record of prosecutorial misconduct or improper closing argument.   There was no violation of the confrontation clause in this case because Defendant had the opportunity to confront all the witnesses who testified against him.   Appellate counsel was not constitutionally deficient for failing to raise frivolous issues on appeal that were not supported by the record.   It is likely that, had these issues been raised on appeal, they would have been rejected by the Fifth Circuit.

Having failed to show either deficient performance or resulting prejudice, Defendant has failed to establish ineffective assistance of counsel on appeal and his § 2255 Motion on this basis is denied.

## IV.   **SUBSTANTIVE CLAIMS**

Defendant argues that his conviction should be vacated because he was denied his right to cross-examine witnesses at the suppression hearing and at sentencing (Claims 1 and 32, 3 and 35, 19, and 36), because there were factual inaccuracies in the PSR (Claim 25), because the jurors may have misunderstood the jury instructions (Claims 26 and 33), and because his sentence was based on improper enhancements (Claim 37).  The Government correctly notes that all of these substantive claims are barred by the doctrine of procedural default as the result of Defendant's failure to raise these claims on direct appeal.

Under the doctrine of procedural default, a § 2255 movant who fails to raise a constitutional or jurisdictional issue on direct appeal waives the issue for purposes of collateral review.  *See United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000)).  When a defendant has procedurally defaulted a challenge by failing to raise error properly on direct appeal, the claim may be raised in a § 2255 motion only if the defendant can first demonstrate (1) cause and prejudice, or (2) that he is "actually innocent" of the

crime for which he was convicted.  *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

Guardado-Mezen does not argue or show that he is actually innocent, and the record would refute any such claim.  In an effort to establish cause, Guardado-Mezen blames his appellate attorney for failing to present the above-referenced claims on appeal.   Although ineffective assistance of counsel can constitute cause for a procedural default, "[n]ot just any deficiency will do . . . ."  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  "[T]he assistance must have been so ineffective as to violate the Federal Constitution."  *Id.*  For reasons discussed further below, Defendant fails to show that his defaulted claims have merit.  As discussed above, he has not demonstrated that his counsel was ineffective for failing to raise these claims on direct appeal.  *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).  More importantly, he does not demonstrate actual prejudice necessary to excuse his procedural default.  As a result of his procedural default, Guardado-Mezen cannot show that he is entitled to relief under 28 U.S.C. § 2255 on any of his substantive claims, the merits of which are examined briefly below.

### A.   Right to Cross-Examine Witnesses

In Claims 1 and 32, 3 and 35, 19 and 36 (as well as in parts of other claims), Defendant asserts in various forms that he was denied his right to cross-examine

Barnica at the suppression hearing and at sentencing.  The record reflects that Barnica did not testify at the suppression hearing and that Mosbacker thoroughly cross-examined the witness who testified for the United States.  *See* Suppression Hearing Transcript [Doc. # 105], pp. 77-121.  Similarly, Barnica did not testify at sentencing and the Court declined to impose the two-point enhancement based on Barnica's allegation that Defendant threatened her.

### B.      Factual Inaccuracies in the PSR

In Claim 25, Defendant complains that the Court failed to correct unspecified factual inaccuracies in the PSR.  Generally, challenges to the contents of the PSR do not constitute grounds for § 2255 relief if they could have been, but were not, raised on direct appeal.  *See United States v. Perez*, 952 F.2d 908, 910 (5th Cir. 1992).  Defendant has failed to present any explanation for his failure to present this issue on direct appeal and, as a result, he is not entitled to relief under § 2255 on the basis of any perceived inaccuracies in the PSR.

### C.      Juror Understanding of Jury Instructions

In Claim 26 (duplicated as Claim 33), Defendant questions whether the jury understood the jury instructions and whether the jury instructions "deprived the defendant of due process or some other constitutional right."  The Court finds that the jury instructions were correct, appropriate, and did not violate any of Defendant's

constitutional rights.   There exists a well-established presumption that jurors understand and follow the Court's instructions.  *See United States v. Patino-Prado*, 533 F.3d 304, 313 (5th Cir. 2008).  This presumption can be overcome only when there "is an overwhelming probability that the jury will be unable to follow the instruction and there is a strong probability that the effect is devastating." *Id.* (quoting *United States v. Barksdale-Contreras*, 972 F.2d 111, 116 (5th Cir. 1992)).  Defendant has offered no basis for rejecting the presumption that the jury understood and followed the Court's instructions in this case.  Defendant is not entitled to relief under § 2255 based on his unsupported suspicion that the jury may not have understood the Court's instructions.

### D.    Sentencing Enhancements

Defendant argues in Claim 37 that his sentence was based on a Sentencing Guidelines calculation that improperly included enhancements.  "A district court's calculation under or application of the sentencing guidelines standing alone is not the type of error cognizable under section 2255." *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995); *see also Inzunza-Ramirez v. United States*, 2007 WL 2402554, *6 (W.D. Tex. Aug. 14, 2007) (holding that "challenges to a sentencing court's factual findings concerning sentencing adjustments may not be raised in a § 2255 proceeding if they could have been raised on direct appeal").  Moreover, those enhancements that

were applied in this case were proper and fully supported by the record.[5]  Defendant is not entitled to have his sentence vacated based on the Court's application of the Sentencing Guidelines.

## V.    CERTIFICATE OF APPEALABILITY

Defendant's § 2255 motion is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2253.  Thus, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the defendant makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires the defendant to demonstrate "that reasonable jurists would find the

---

[5]     To the extent Defendant means to argue that his sentence was improper under *United States v. Booker*, 543 U.S. 220 (2005), the Fifth Circuit rejected Defendant's argument that his sentence was unreasonable, finding that the Court properly considered the effect of *Booker* at  the time of sentencing, and affirmed Guardado-Mezen's sentence.  *See Ibarra-Zelaya*, 465 F.3d at 608.

district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Under the controlling standard, this requires the defendant to show "that reasonable jurists could debate whether (or, for that matter, agree that) the [§ 2255 Motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"   *Miller-El*, 537 U.S. at 336.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).   After carefully considering the entire record of the criminal proceeding, the Court concludes that jurists of reason would conclude without debate that Guardado-Mezen has not stated a valid claim for relief under § 2255. Accordingly, a certificate of appealability will not issue.

## VI.   CONCLUSION AND ORDER

Because Defendant has failed to establish an error of constitutional or jurisdictional magnitude, he is not entitled to relief under 28 U.S.C. § 2255.  Based on the foregoing, the Court **ORDERS** as follows:

1.    The United States' Motion to Dismiss [Doc. # 478] is **GRANTED**,

Defendant's pending § 2255 motion [Doc. # 456] is **DENIED**, and the

corresponding civil action (H-08-1628) is **DISMISSED** with prejudice.

2.    A certificate of appealability from this decision is **DENIED**.

The Court will issue a separate Final Order.

The Clerk will provide a copy of this Memorandum and Order to the parties and

will file a copy in Civil Action No. H-08-1628.

SIGNED at Houston, Texas, this 23rd day of **July, 2009**.

Nancy F. Atlas
United States District Judge